## Commonwealth v. Grandone.

*Criminal law and procedure—Evidence—Reputation—Substantive defence —Charge of the court—General exception.*

1. Generally speaking, evidence of good character is to be regarded as a substantive fact, like any other, tending to establish the defendant's innocence, and ought to be so regarded by both court and jury.

2. But good reputation in one particular may throw no light upon the question at issue, and, therefore, the only evidence which is relevant is evidence of the trait of character which may have bearing upon the alleged offence.

3. Upon the trial of an indictment charging the defendant with practicing medicine and surgery without a license, it was testified that the defendant had a good reputation for veracity, and counsel asked that the jury be instructed "that good reputation is a substantive defence." The court charged the jury that his reputation as a truth-telling man went to the question whether they should believe the defendant or the witnesses for the Commonwealth, and that they should take the testimony and consider it as substantive evidence of the case: *Held*, the defendant's rights were abundantly protected and there was no error committed in the charge in this respect.

4. Under a general exception to the charge of the court, error can be assigned only to such matters as are basic and fundamental.

Motion for new trial. Q. S. Dauphin Co., June Sess., 1922, No. 99.

*Victor Braddock*, for motion; *Philip S. Moyer*, District Attorney, contra.

HARGEST, P. J., Dec. 30, 1922.—The defendant in this case was charged with practicing medicine and surgery; holding himself forth as a practitioner in medicine and surgery; assuming the title of doctor of medicine and surgery, and diagnosing and treating diseases by the use of medicine and surgery without a license, contrary to the provisions of section 1 of the Act of June 3, 1911, P. L. 639. The evidence showed that the defendant was practicing a system known as chiropractic or chiropractice. Upon his conviction he made a motion for a new trial.

The reasons assigned for a new trial, from 1 to 8, inclusive, bring into question the correctness of the court's interpretation of the statute above referred to and instructions to the jury as to what constitutes practicing medicine and surgery and diagnosing diseases under the said act of assembly. It is not necessary for us to review them in detail. It is sufficient to say that all of the language which the court used in the charge in defining what constitutes practicing medicine and surgery and diagnosing diseases, and in interpreting the act of assembly above referred to, was taken from the cases of Com. v. Byrd, 64 Pa. Superior Ct. 108; Com. v. Seibert, 69 Pa. Superior Ct. 271, and Com. v. Seibert, 262 Pa. 345, either *verbatim* or as nearly as could be, to adapt it to the case. See, also, cases from other states cited in Com. v. Himmel, 25 Dauphin Co. Reps. 449. Inasmuch as the matter has been fully covered in these authorities, further discussion of these reasons is unnecessary.

3 D. & C.

Reasons 9-13, inclusive, raise the question of the correctness of the charge with reference to the evidence as to good reputation. The defendant himself testified that he made adjustments of the spinal cord, where it was out of alignment, for the purpose of affording relief or curing ills. This whole case turned upon the interpretation of the act of assembly. Under our view of that act, there was no doubt, from the defendant's own testimony, that he had violated it, in so far as the practice of medicine and surgery was concerned. The testimony of the defendant himself and of the witnesses of the Commonwealth as to what was done in the treatment did not materially differ. As to what was said by the defendant, the testimony of the defendant himself and the witnesses for the Commonwealth did differ; and this went, not to the question of practicing medicine and surgery, so much as to the question of whether the defendant was diagnosing. In the course of the charge, the court said: "There are also witnesses as to his reputation for veracity and truth-telling, and in this case the only part that that evidence plays is to enable you to determine who is telling the truth. The reputation for veracity has nothing to do with the fact as to whether or not what he did was practicing medicine and surgery, except as you determine from it who was telling the truth. So you will have to determine what the defendant did and whether what he did, under the instructions which we have given you, was practicing medicine and surgery."

At the close of the charge, counsel asked that the jury be instructed "that good reputation is a substantive defence." Thereupon the court charged as follows: "I have already said, gentlemen, that you must take the evidence of reputation into consideration, but in this case the evidence of reputation is not quite what you find in some cases. For instance, a man would be charged with assault and battery, and if he denied having committed the act and should put witnesses on the stand to show that he had a good reputation as a peaceable, law-abiding citizen, you will see at once that that testimony goes to contradict or to the merits of the whole case, and may raise a reasonable doubt as to whether a man of that character would commit the offence with which he is charged. The reputation testified to in this case is that the defendant is a truth-telling man, and that does not go to the whole merits of the case; it goes to the question as to whether you will believe him or believe the witnesses for the Commonwealth as to what transpired when these witnesses were in his place. It may be that, even though you believe him, you may still find, if you believe that those thrusts which he was making upon those people were for the purpose of curing the ills which they were subject to, that you may still find him to have practiced medicine and surgery under the instructions which I have given you. So that, while evidence of reputation is substantive evidence which may be considered along with all the other evidence in the case, and you must so consider it in this case, you must consider it only to the extent of ascertaining who is telling the truth. Take the case and give it the careful consideration that it deserves."

The record then contains the following: "Before the jury retires, counsel for the defendant moves the court to reduce the testimony and the charge to writing and file the same of record, and excepts thereto."

Counsel for defendant did not take a specific exception to this part of the charge, but excepted to it generally. It is thoroughly settled that, under a general exception, errors can be assigned to only such matters as are basic and fundamental: Marshall *v.* Carr, 271 Pa. 271; Com. *v.* Scherer, 266 Pa. 210; Sikorski *v.* P. & R. Ry. Co., 260 Pa. 243; Chamberaeti *v.* Susquehanna Coal Co., 262 Pa. 261; Com. *v.* Taylor, 78 Pa. Superior Ct. 386. Therefore,

we might disregard the reasons based upon the instruction as to evidence of reputation, because, if there was any error, it was neither basic nor fundamental; but we will not draw the line as strictly as an appellate court might do.

We think, however, there was no error in the instructions in this particular. There is no doubt that, generally speaking, evidence of good character is to be regarded as a substantive fact, like any other, tending to establish the defendant's innocence, and ought to be so regarded by both court and jury: Com. v. Chester, 77 Pa. Superior Ct. 388. A court cannot charge that if the jury is satisfied beyond a reasonable doubt of the defendant's guilt under all the evidence, the testimony of previous good character is not to overcome that conclusion, because the evidence of previous good character must be taken into consideration and may of itself raise the doubt. This is necessarily so where the evidence of reputation would rebut the inference of guilt, in such cases as murder (Com. v. Cate, 220 Pa. 138; Com. v. Cleary, 135 Pa. 64); rape (Com. v. Howe, 38 Pa. Superior Ct. 208; Com. v. Kester, 58 Pa. Superior Ct. 509); conspiracy to defraud (Hanney v. Com., 116 Pa. 322), and similar cases.

But good reputation in one particular may throw no light upon the question at issue, and, therefore, the only evidence which is relevant is evidence of the trait of character which may have bearing upon the alleged offence: Com. v. Irvin, 1 Clark, 344. For instance, honesty would directly bear upon a charge of fraud or larceny, but a reputation as to being an orderly person would not be relevant in arson or libel, nor being a kind-hearted man in a charge of murder (Cathcart v. Com., 37 Pa. 108), and a reputation for chastity would have little to do with the charge of robbery. So that in practically all jurisdictions evidence of good character is limited to the trait of character involved in the commission of the crime charged: 3 Ency. of Evidence, 20, and notes; 16 Cyc., 1270; 22 Corpus Juris, 474, et seq.; 10 Ruling Case Law, 123. Of what use would evidence of good reputation as a law-abiding citizen be in a case where defendant admitted that he had sold liquor without a license, or evidence of good reputation for veracity in a case where one was charged with selling milk below the legal standard, and who admitted the sale, the only question being whether the milk was below the standard. Com. v. Kolb, 13 Pa. Superior Ct. 347, sustains this proposition. There the defendant was charged with selling oleomargarine. The court said, page 354: "The habitual sale of the article in question, as butter, was admitted by them on cross-examination, and the only matter of fact in dispute was whether or not this article was butter. The good character of the defendants had no possible bearing on this point, nor could it create a doubt respecting the conceded fact of sale."

We think the case before us is exactly parallel. The defendant admitted the manipulation and the thrusts, and that the purpose of them was to assist nature to cure ills. The only question was the proper interpretation of the act of assembly. He contended that he' had not practiced medicine and surgery, and, therefore, had not violated the act. But, under our interpretation of the act, his own testimony proved him guilty. What possible bearing, therefore, could his reputation as a law-abiding citizen, or his reputation for veracity, have on the issue? The latter might have some bearing on the question of whether he was diagnosing disease. The defendant himself denied the evidence of witnesses for the Commonwealth as to declarations made by him which, if believed, showed that he made diagnoses. We charged the jury that his reputation as to being a truth-telling man went to the question as to whether they should believe him or the witnesses for the Commonwealth as

3 D. & C.

to what transpired when the witnesses were in his office, and that they were to take the testimony and consider it as substantive evidence in the case. We think that the defendant's rights were abundantly protected and that no error was committed in the charge in this respect.

The motion for a new trial is, therefore, overruled and the district attorney directed to move for judgment.

From William Jenkins Wilcox, Harrisburg, Pa.